Melissa A. Fortunato (# 319767)
**BRAGAR EAGEL & SQUIRE**
101 California Street, Suite 2710
San Francisco, California 94111
Telephone: (415) 365-7149
Email: fortunato@bespc.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX RYDER, | Case No._____ |
| Plaintiff, | |
| v. | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| PORTOLA PHARMACEUTICALS, INC., JEFFREY W. BIRD, JOHN H. JOHNSON, H. WARD WOLFF, DENNIS M. FENTON, DAVID C. STUMP, TED W. LOVE, LAURA A. BREGE, SCOTT GARLAND and HOLLINGS C. RENTON, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff Alex Ryder ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

### NATURE OF THE ACTION

1. Plaintiff brings this action against Portola Pharmaceuticals, Inc. ("Portola" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual

- 1 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Case 4:20-cv-03810-HSG   Document 1   Filed 06/10/20   Page 2 of 14

Defendants") for their violations of Sections 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(e), 78t(a), arising out of their attempt to sell the Company to Alexion Pharmaceuticals, Inc. ("Alexion"), via a tender offer (the "Offer") (the "Proposed Transaction").

2. On May 5, 2020, the Company announced that it had entered into an Agreement and Plan of Merger (the "Merger Agreement") pursuant to which Portola stockholders will receive $18.00 in cash for each share of Portola common stock held.

3. On May 27, 2020, Portola filed a Schedule 14D-9 Solicitation/Recommendation Statement (including all amendments, the "14D-9") with the SEC. The 14D-9 is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding: (i) Portola management's financial projections, relied upon by the Company's financial advisor, Centerview Partners LLC ("Centerview"), in its financial analyses; (ii) the data and inputs underlying the financial analyses that support Centerview's fairness opinion; and (iii) Company insiders' potential conflicts of interest. Accordingly, without additional information the 14D-9 is materially misleading in violation of federal securities laws.

4. The expiration of the Offer is forthcoming. Under the Merger Agreement, following successful completion of the Offer, the Proposed Transaction will be consummated. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin the expiration of the Offer unless and until the material information discussed below is disclosed to the holders of the Company common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

- 2 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(e) and 20(a) of the Exchange Act pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.  Portola is incorporated in Delaware and is headquartered in this District.  Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

**PARTIES**

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Portola.

9. Defendant Portola is a Delaware corporation with its principal executive offices located at 270 E. Grand Avenue, South San Francisco, CA 94080.  Portola's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "PTLA."

10. Defendant Jeffrey W. Bird has served as a director of the Company since November 2003.

11. Defendant John H. Johnson has served as a director of the Company since March 2014.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

12. Defendant H. Ward Wolff has served as a director of the Company since November 2007.

13. Defendant Dennis M. Fenton has served as a director of the Company since February 2015.

14. Defendant David C. Stump has served as a director of the Company since September 2015.

15. Defendant Ted W. Love has served as a director of the Company since September 2019.

16. Defendant Laura A. Brege has served as a director of the Company since January 2015.

17. Defendant Scott Garland has served as the Company's President, Chief Executive Officer ("CEO") and a director since October 2018.

18. Defendant Hollings C. Renton has served as Chairman of the Board and a director of the Company since March 2010.

19. Defendants identified in paragraphs 10 to 18 are collectively referred to herein as the "Board" or the "Individual Defendants."

20. Relevant non-party Alexion is a global biopharmaceutical company headquartered in Boston, Massachusetts, focused on serving patients and families affected by rare and devastating diseases through the discovery, development and commercialization of life-changing medicines. Alexion's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "ALXN."

## SUBSTANTIVE ALLEGATIONS

**Company Background**

21. Portola is a biopharmaceutical company focused on the development and

- 4 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

commercialization of novel therapeutics in the areas of thrombosis, other hematologic diseases and inflammation for patients who currently have limited or no approved treatment options. The Company's lead product is Andexxa (coagulation factor Xa [recombinant], inactivated-zhzo) which is marketed under the brand name of Ondexxya in Europe. Andexxa is the first and only antidote approved by the U.S. Food and Drug Administration ("FDA") and the European Commission ("EC") for patients treated with rivaroxaban or apixaban, when reversal of anticoagulation is needed due to life-threatening or uncontrolled bleeding. Portola is conducting clinical trials with cerdulatinib, an investigational oral, dual spleen tyrosine kinase ("SYK") and Janus kinase ("JAK") inhibitor to treat hematologic cancers.

22. On February 26, 2020, the Company reported its fourth quarter and full year 2019 financial results. Total global revenues were $29.2 million for the quarter, compared to $15.3 million for the fourth quarter of 2018 and $116.6 million for the year, compared to $40.1 million for the full year of 2018. Commenting on the results, defendant Garland stated:

> 2019 was a year of significant accomplishments for Portola with the launch of our Gen 2 formulation of Andexxa in the United States and the approval and launch of Ondexxya in Europe. In 2020 we have several catalysts that we expect to drive further adoption and growth worldwide. . . . This includes the presentation of new clinical data, enhanced education and support related to reimbursement, the initiation of our urgent surgery study, and continued execution of the Ondexxya launch in Europe. Combined with the robust growth in the Factor Xa inhibitor market and our other strategic initiatives, we are confident that Andexxa has significant long-term growth potential.

23. On May 11, 2020, the Company reported its first quarter 2020 financial results. Total global revenues for the first quarter of 2020 were $26.4 million compared with $22.2 million for the same period in 2019. Net loss attributable to Portola was $68.8 million, or $0.88 net loss per share, compared with $78.2 million, or $1.17 net loss per share, for the first quarter of 2019. Defendant Garland commented on the Company's results and outlook, stating:

- 5 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

> 2020 started strong with January representing our highest month of Andexxa demand in the U.S. since launch, driven in part by a return of growth in our tier one accounts. While encouraging, the emergence of the COVID-19 pandemic impacted our revenue in March and the quarter due to three main factors. First, market research and customer feedback indicate that shelter-in-place restrictions issued by over 40 states have led to fewer patients coming into emergency departments. Second, most healthcare systems shifted their focus to preparing for and addressing COVID-19 patients, which impacted the number of new accounts added in the quarter. Finally, on March 13, we suspended face-to-face field interactions with healthcare providers. Despite these challenges, we continue to execute on our growth drivers and make progress with virtual meetings and education programs to highlight the value proposition of Andexxa, including recently presented clinical data.

24. On May 5, 2020, Portola and Alexion issued a joint press release announcing the Proposed Transaction. The press release states:

> BOSTON & SOUTH SAN FRANCISCO, Calif.-- Alexion Pharmaceuticals, Inc. (NASDAQ:ALXN) and Portola Pharmaceuticals, Inc. (NASDAQ:PTLA) announced today that they have entered into a definitive merger agreement for Alexion to acquire Portola, a commercial-stage biopharmaceutical company focused on life-threatening blood-related disorders. Portola's commercialized medicine, Andexxa® [coagulation factor Xa (recombinant), inactivated-zhzo], marketed as Ondexxya® in Europe, is the first and only approved Factor Xa inhibitor reversal agent, and has demonstrated transformative clinical value by rapidly reversing the anticoagulant effects of Factor Xa inhibitors rivaroxaban and apixaban in severe and uncontrolled bleeding. The acquisition will add near-term diversification to Alexion's commercial portfolio and provides the opportunity to apply the company's demonstrated global commercial excellence to create long-term value for patients and shareholders. The merger agreement has been unanimously approved by the boards of Alexion and Portola.
>
> "The acquisition of Portola represents an important next step in our strategy to diversify beyond C5. Andexxa is a strategic fit with our existing portfolio of transformative medicines and is well-aligned with our demonstrated expertise in hematology, neurology and critical care," said Ludwig Hantson, Ph.D., Chief Executive Officer of Alexion. "We believe Andexxa has the potential to become the global standard of care for patients who experience life-threatening bleeds while taking Factor Xa inhibitors apixaban and rivaroxaban. By leveraging Alexion's strong operational and sales infrastructure and deep relationships in hospital channels, we are well positioned to expand the number of patients helped by Andexxa, while also driving value for shareholders."
>
> "In developing and launching Andexxa, Portola has established a strong foundation for changing the standard of care for patients receiving Factor Xa inhibitors that experience a major, life-threatening bleed. Andexxa rapidly reverses the pharmacologic effect of rivaroxaban and apixaban within two minutes, reducing anti-

Factor Xa activity by 92 percent," said Scott Garland, President and Chief Executive Officer of Portola. "Given their enhanced resources, global footprint and proven commercial expertise, we look forward to working with Alexion to maximize the value of Andexxa. With their commitment to commercial excellence, together, we will be able to drive stronger utilization of Andexxa, increase penetration and accelerate adoption in the critical care setting."

**Transaction Details**

Under the terms of the merger agreement, a subsidiary of Alexion will commence a tender offer to acquire all of the outstanding shares of Portola's common stock at a price of $18 per share in cash. The tender offer is subject to customary conditions, including the tender of a majority of the outstanding shares of Portola common stock, the expiration or termination of the waiting period under the Hart-Scott Rodino Antitrust Improvements Act of 1976 and receipt of certain other regulatory approvals.

Following successful completion of the tender offer, Alexion will acquire all remaining shares not tendered in the offer at the same price of $18 per share through a merger. The transaction is expected to close in the third quarter of 2020.

Alexion will fund the transaction with cash on hand. As part of the acquisition, Alexion will also be acquiring cash currently on Portola's balance sheet, net of debt of approximately $215 million that will become due upon closing. As of December 31, 2019, cash and short-term investments were approximately $430 million. The actual amounts will be determined as of the transaction close.

**The 14D-9 Misleads Portola Stockholders by Omitting Material Information**

28. On May 27, 2020, the Company filed the materially misleading and incomplete 14D-9 with the SEC. Designed to convince the Company's stockholders to tender their shares in the Offer, the 14D-9 is rendered misleading by the omission of critical information concerning: (i) Portola management's financial projections, relied upon by the Company's financial advisor Centerview in its financial analyses; (ii) the data and inputs underlying the financial analyses that support Centerview's fairness opinion; and (iii) Company insiders' potential conflicts of interest.

*Material Omissions Concerning Portola's Financial Projections*

29. The 14D-9 omits material information regarding Company management's financial projections.

30. The 14D-9 sets forth:

> As part of management's and the Portola Board's ordinary course considerations of Portola's strategic opportunities, management updated Portola's non-public, unaudited prospective financial information in January 2020 (the "**Initial Long-Term Plan**") as set forth in the corresponding table below. Such information was considered by the Portola Board in connection with its consideration of Alexion's proposal at the March 6, 2020 meeting of the Portola Board as described in more detail above in the section captioned "—*Background of the Offer and the Merger*." At the direction of the Portola Board, in March and at the beginning of April 2020, management updated the Initial Long-Term Plan, which assumed an equity raise by Portola to continue as a standalone company and that Portola would retain a worldwide right to commercialize Andexxa, to account for the impact of the COVID-19 pandemic on Portola's actual financial performance, prospects and the decision to out-license to a third party ex-U.S. rights to Andexxa if Portola were to remain a standalone company, the inclusion of Andexxa Japan and ex-U.S. royalty revenue, updated label expansion assumptions to include enoxaparin approval in 2021 and reductions in operating expenses in light of the revised revenue projections (the "**Updated Long-Term Plan**") as set forth in the corresponding table below—for further information see the sections captioned "—*Background of the Offer and the Merger*" and '—*Portola's Reasons for the Offer and the Merger*. Management presented the Updated Long-Term Plan to the Portola Board on April 27, 2020 in connection with its consideration of a strategic transaction with Alexion, and the Portola Board subsequently approved providing the Updated Long-Term Plan to Centerview to use in connection with Centerview's fairness opinion, as further described below in the section captioned "—*Opinion of Portola's Financial Advisor*."
>
> We refer to the Initial Long-Term Plan and the Updated Long-Term Plan, collectively, as the "**Management Projections**." The Management Projections were prepared by Portola on a standalone basis and do not take into account the Transactions, including any costs incurred in connection with the Offer or the other transactions contemplated thereby or any changes to Portola's operations or strategy that may be implemented after the completion of the Merger. The Management Projections were risk-adjusted to take into account a variety of potential outcomes. As a result, actual results likely will differ, and may differ materially, from those reflected in the Management Projections.

14D-9 at 29 (emphasis in original). The 14D-9 fails, however, to disclose the details of the risk adjustments that were incorporated into the projections as well as the variety of potential outcomes that were taken into account in creating the projections and also fails to disclose the un-risked projections so Portola stockholders can evaluate the financial impact the Company's risk adjustments had on the projections.

31. Additionally, the 14D-9 fails to disclose a breakdown of the specific revenues and unlevered free cash flows ("UFCFs") from Andexxa and the Company's current pipeline of other drug candidates in the early stages of research and development for the indications currently being investigated by the Company.

32. Moreover, the 14D-9 fails to disclose: (i) the definition of how UFCFs were calculated; (ii) all line items underlying the calculation of UFCFs and EBIT; and (iii) the benefits of the Company's net operating losses ("NOLs") over the projection period.

33. The omission of this information renders certain portions of the 14D-9 materially misleading, including, inter alia, the following section of the 14D-9: "Projected Financial Information."

*Material Omissions Concerning Centerview's Financial Analyses*

34. The 14D-9 describes Centerview's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Centerview's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Portola's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Centerview's fairness opinion in determining whether to tender their shares in the Proposed Transaction or seek appraisal.

35. With respect to Centerview's *Discounted Cash Flow Analysis*, the 14D-9 fails to disclose: (i) the individual inputs and assumptions underlying the discount rate range of 9.5% to 11.5%; (ii) the basis for assuming that unlevered free cash flows would decline in perpetuity after December 31, 2032 at a rate of free cash flow decline between 30.0% to 20.0% year-over-year; (iii) the present value of the estimated costs associated with an assumed issuance of $100 million in

equity securities in 2021; (iv) the impact of potential standalone tax savings from federal NOLs; and (v) the fully diluted shares outstanding of Portola as of May 1, 2020.

36. Further, the 14D-9 sets forth that:

> Subsequent to the public announcement of the Transactions, Portola and Centerview together considered the treatment in Centerview's financial analyses of obligations under certain royalty agreements to which Portola entered into for purposes of financing its operations. In Centerview's financial analyses performed on May 4, 2020 as further described above in the section "—*Opinion of Portola's Financial Advisor*," these royalty agreements were characterized as indebtedness of Portola for valuation purposes assuming payment of the maximum amounts expected to be owed by Portola pursuant to such royalty agreements, with no effect on Portola's unlevered free cash flows ("**Methodology 1**"). Subsequent to the public announcement of the Transactions, Portola and Centerview reviewed potential alternative ways of analyzing the value impact of such obligations:
>
> - As indebtedness of Portola at the amount reflected on Portola's most recent balance sheet as included in Portola's most recent Form 10-Q and projected forward to June 30, 2020, which assumes a debt amount less than the maximum amount expected to be owed by Portola pursuant to such royalty agreements, with no effect on Portola's unlevered free cash flows ("**Methodology 2**"), or
>
> - Not as indebtedness, but as a royalty expense on Portola's income statement applying the applicable royalty rates in the underlying agreements to Andexxa projected revenues ("**Methodology 3**").

*Id.* at 38. The 14D-9 fails to explain why Centerview and Portola did not review the potential alternative ways of analyzing the value impact of such obligations *prior to* entering into the Merger Agreement, as well as the impetus for performing the additional analyses.

37. With respect to Centerview's analysis of stock price targets, the 14D-9 fails to disclose the individual price targets for the Company and the sources thereof.

38. With respect to Centerview's analysis of premiums paid, the 14D-9 fails to disclose the individual premiums for each of the transactions observed by Centerview.

- 10 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

39. The omission of this information renders certain portions of the 14D-9 materially misleading including, inter alia, the following sections of the 14D-9: "Opinion of Portola's Financial Advisor" and "Projected Financial Information."

*Material Omissions Concerning Company Insiders' Potential Conflicts of Interest*

40. The 14D-9 fails to disclose material information concerning the potential conflicts of interest faced by Company insiders.

41. The 14D-9 fails to disclose the specific details of all employment and retention-related discussions and negotiations that occurred between Alexion and Portola executive officers and directors, including who participated in all such communications, when they occurred and their content. The 14D-9 further fails to disclose whether any of Alexion's proposals or indications of interest mentioned management retention, consulting arrangements, cash, stock and co-investment opportunities, or equity participation in the combined company. In addition, the 14D-9 fails to disclose the details of the discussions and negotiations concerning certain members of Portola management's in-the-money options and restricted stock units ("RSUs") which will roll over and be converted into Alexion options and RSUs in connection with the Proposed Transaction.

42. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

43. The omission of this information renders certain portions of the 14D-9 materially misleading, including, inter alia, the following sections of the 14D-9: "Background of the Offer and Merger" and "Interests of Our Directors and Executive Officers in the Merger."

44. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations
of Section 14(e) of the Exchange Act**

45. Plaintiff repeats all previous allegations as if set forth in full.

46. Defendants violated Section 14(e) of the Exchange Act by issuing the 14D-9 in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the Offer commenced in conjunction with the Proposed Transaction.

47. Defendants knew that Plaintiff would rely upon their statements in the 14D-9 in determining whether to tender his shares pursuant to the Offer commenced in conjunction with the Proposed Transaction.

48. As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether or not to tender his shares or seek to exercise his appraisal rights.

### COUNT II

**Claims Against the Individual Defendants for
Violation of Section 20(a) of the Exchange Act**

49. Plaintiff repeats all previous allegations as if set forth in full.

50. The Individual Defendants acted as controlling persons of Portola within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers or directors of Portola and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the 14D-9 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

51. Each of the Individual Defendants was provided with or had unlimited access to copies of the 14D-9 and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The 14D-9 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

53. In addition, as the 14D-9 sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The 14D-9 purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

54. By virtue of the foregoing, the Individual Defendants have violated section 20(a) of the Exchange Act.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Portola, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to disseminate a 14D-9 that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: June 10, 2020                                **BRAGAR EAGEL & SQUIRE, P.C.**

By: */s/ Melissa A. Fortunato*
Melissa A. Fortunato (#319767)
101 California Street, Suite 2710
San Francisco, California 94111
Telephone: (415) 365-7149
Email: fortunato@bespc.com

*Counsel for Plaintiff*